IN THE CIRCUIT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA

CASE No.:

| | |
|---|---|
| ANTAO PROPERTIES LLC, a Florida limited liability company, individually and on behalf of all others similarly situated, | **CLASS REPRESENTATION**<br><br>*JURY TRIAL REQUESTED* |
| *Plaintiff,* | |
| vs. | |
| FIRST AMERICAN TITLE INSURANCE COMPANY, | |
| *Defendant.*_____/ | |

**CLASS ACTION COMPLAINT**

Plaintiff, ANTAO PROPERTIES LLC (hereinafter "Plaintiff"), brings this class action under Rule 1.220 of the Florida Rules of Civil Procedure, hereby sues Defendant, FIRST AMERICAN TITLE INSURANCE COMPANY (hereinafter "Defendant"), on behalf of itself and all others similarly situated, and alleges as follows:

1. This case arises from closing fees improperly charged and collected by Defendant from buyers of real estate transactions throughout the State of Florida.

2. This action is brought on behalf of Plaintiff and all others similarly situated (collectively "Buyers"), pursuant to Florida Rules of Civil Procedure 1.220(b)(1), (2), and/or (3), seeking declaratory relief, injunctive relief, and/or damages in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of interest, costs, and attorneys' fees.

## THE PARTIES, JURISDICTION AND VENUE

3. Plaintiff is a single member Florida limited liability company. Plaintiff's single individual member, Edward Antao, is a resident of Florida.

4. Defendant, a licensed title agency (hereinafter "Closing Agent"), is a foreign company licensed and registered to do business in Florida, having offices located throughout the State of Florida, including at 2370 Drew Street, Suite A, Clearwater, Florida 33765. Defendant lists its registered agent as Chief Financial Officer, 200 E. Gaines Street, Tallahassee, Florida 32399.

5. Jurisdiction exists pursuant to Florida Statute § 48.193(1)(a)(1), because Defendant has physical places of business in this state, and operates, conducts, engages in, and carries on its business in this state.

6. Venue exists pursuant to Florida Statutes §§ 47.011, 47.041, and 47.051, because Plaintiff's causes of action accrued in this county. Defendant conducts business in Pinellas County, Florida, and the events, acts, breaches, misrepresentations, and/or omissions giving rise to Plaintiff's causes of action occurred in Pinellas County.

7. Defendant and its employees, subsidiaries, affiliates, and other related entities, were, at all times relevant herein, agents, servants and employees of each other, and at all times herein mentioned, each was acting within the purpose and scope of said agency and employment. Whenever reference in this Complaint is made to any act or transaction of Defendant, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendant committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of Defendant, while actively engaged in the scope of their duties.

## FACTS COMMON TO ALL CLAIMS

8. On or about November 14, 2017, Plaintiff entered into a real estate purchase and sale contract (hereinafter "Contract") with the owner (hereinafter "Seller") of certain real estate located in Pinellas Florida (hereinafter "Property"). Pursuant to the terms of the Contract, Plaintiff agreed to pay cash for the Seller's Property. Accordingly, the Contract was between Plaintiff, as the "Buyer," and the owners, as the "Seller."

9. The Contract is a standardized form known as the "'AS IS' Residential Contract for Sale and Purchase" approved by the Florida Bar and Florida Association of Realtors. (hereinafter "FARBAR Contract").

10. A copy of the Contract is attached hereto as **Exhibit "A"**.

11. Paragraph 9 of the Contract states in relevant part:

> **9.    CLOSING COSTS; TITLE INSURANCE . . .**
>
> **(a)    COSTS TO BE PAID BY SELLER:**
>
> ***
>
> • Owner's Policy and Charges (if Paragraph 9(c)(i) is checked
>
> ***
>
> **(c) TITLE EVIDENCE AND INSURANCE:** At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked, then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a copy shall be furnished to Buyers and Closing Agent within 5 days after Effective Date. **The owner's title policy premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set forth below.** The title insurance premium charges for the owner's policy and any lender's policy will be calculated and allocated in accordance with Florida law, but may be reported differently on certain federally mandated closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded liens imposed pursuant to Chapters 159 or 170, F.S., in favor of any governmental body, authority or agency.
> **(CHECK ONE):**

> **x (i)** *Seller shall* **designate Closing Agent and** *pay for Owner's Policy and Charges*, and Buyer shall pay the premium for Buyer's lender's policy and charges for closing services *related to* the lender's policy, endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other provider(s) as Buyer may select; (emphasis added) . . .

12. Pursuant to Paragraph 9(c) of the Contract, the owner's title policy premium, title search and **title agent closing services** (collectively, "Owners Policy and Charges") were to be charged to either the Buyer or Seller consistent with the terms of the Contract.

13. The Buyer and Seller agreed to the option reflected in Paragraph 9(c)(i) of the Contract, which specifies that the **Seller** "**shall** designate Closing Agent and **pay for Owner's Policy and Charges**".

14. Pursuant to Paragraph 9(c)(i), charges and fees are only to be paid by the Buyer in the event the transaction is being financed by a lender. Since the Contract here was an all-cash transaction with no lender, Plaintiff was not responsible for any title agent fees, title policy premiums or lender endorsements.

15. Defendant was the designated Closing Agent for the procurement of title insurance and to perform closing services ("Closing Services") in connection with the transaction. In its capacity as a Closing Agent, Defendant performed Closing Services in connection with the transaction for which Defendant charged a fee ("Closing Services Fee").

16. The Contract provided that the Closing Services Fee would only be charged to, and collected from, the Seller. Because the sale was a cash transaction, there was no lender's policy, endorsement or related loan closing services required to be paid by Plaintiff, the Buyer.

17. At closing of the transaction, Defendant prepared a closing settlement disclosure statement a/k/a HUD ("Closing Statement") detailing the receipts and disbursements made on Plaintiff's account, including the allocation of Defendant's Closing Services Fee. A copy of the Closing Statement is attached hereto as **Exhibit "B"**.

18. As indicated on the Closing Statement, a Closing Services fee in the amount of $150.00 was improperly charged by Defendant to Plaintiff.

19. This amount was charged to Plaintiff's account despite the explicit language in the Contract stating that "Seller shall . . . pay for Owner's Policy and Charges," which, by definition, included Defendant's Closing Services Fee.

20. Consequently, Plaintiff and Class Members have been improperly and unfairly charged monies by the Defendant Closing Agent, which Defendant was not authorized to collect from Plaintiff and Class Members.

21. Defendant knew or should have known that it was only permitted to charge the Seller for the Closing Services Fee.

22. All conditions precedent to this action have occurred.

23. Plaintiff has retained the undersigned attorneys and is obligated to pay said attorney a reasonable attorney's fee.

## CLASS REPRESENTATION ALLEGATIONS

24. Plaintiff re-alleges and incorporates by reference all allegations set forth in the preceding paragraphs of this Complaint, as if fully set forth verbatim herein.

25. Plaintiff brings this class action under Florida Rules of Civil Procedure 1.220(b)(1) and/or 1.220(b)(2), and in the alternative, 1.220(b)(3) on behalf of itself and on behalf of a similarly situated "Class" or "Class Members."

26. The prerequisites set forth in Florida Rule of Civil Procedure 1.220(a) have been met in order to maintain this matter as a class action because "(1) the members of the class are so numerous that separate joinder of each member is impracticable, (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised

by the claim or defense of each member of the class, (3) the claim or defense of the representative party is typical of the claim or defense of each member of the class, and (4) the representative party can fairly and adequately protect and represent the interests of each member of the class." FLA. R. CIV. PRO. 1.220(a).

27. Plaintiff brings this class action individually, and on behalf of a putative class of similarly situated Buyers, and seeks class certification of the claims and issues pleaded in this Complaint, on behalf of the Class defined as follows:

> **All Buyers in all cash real estate sale transactions in Florida, that used an "AS IS" Residential Contract for Sale and Purchase form approved by the Florida Bar and Florida Association of Realtors, that selected sub-paragraph (i) of section 9(c), but who were charged and paid a Closing Agent Closing Services Fee, during the four years precedent to the date of filing this Complaint, through and until the date Notice is provided to the Class.**

28. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

29. All Class Members were and are similarly affected by Defendant's conduct and business practice because they all were cash Buyers who agreed to be charged consistent with section 9(c)(i) of the uniform and standardized FARBAR Contract, but who were all nonetheless charged and paid Closing Services Fees.

30. This matter is appropriate for a class action pursuant to Florida Rule of Civil Procedure 1.220(b)(1), because "the prosecution of separate claims or defenses by or against individual members of the Class would create a risk of either: (A) inconsistent or varying adjudications concerning individual members of the class which would establish incompatible

standards of conduct for the party opposing the class; or (B) adjudications concerning individual members of the class which would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to the adjudications, or substantially impair or impede the ability of other members of the Class who are not parties to the adjudications to protect their interests."

31. A class action is also appropriate pursuant to Florida Rule of Civil Procedure 1.220(b)(2), which states: "the party opposing the class has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate." Here, Defendant's consistent business practice affects all Class Members, including Buyers who may use Defendant as their Closing Agent at the selection of Sellers in the future. Therefore, Defendant's wrongful business practice is continuing and on-going.

32. In the alternative, a class action is proper pursuant to Florida Rule of Civil Procedure 1.220(b)(3), because "the claim or defense is not maintainable under either subdivision (b)(1) or (b)(2), but the questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any question of law or fact affecting only individual members of the class, and class representation is superior to other available methods for the fair and efficient adjudication of the controversy. The conclusions shall be derived from consideration of all relevant facts and circumstances, including (A) the respective interests of each member of the class in individually controlling the prosecution of separate claims or defenses, (B) the nature and extent of any pending litigation to which any member of the class is a party and in which any question of law or fact controverted in the subject action is to be adjudicated, (C) the desirability or undesirability of concentrating the litigation in

the forum where the subject action is instituted, and (D) the difficulties likely to be encountered in the management of the claim or defense on behalf of a class."

33. Based on the estimated number of all cash land sale transactions throughout Florida and investigation of counsel, it is readily apparent that the number of Buyers is so large as to make joinder impractical. Based on information and belief, the size of the Class is likely in the thousands and easily includes more than forty (40) class members. Nevertheless, despite the estimated size of the Class, Class Members may be notified of the class certification and pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice through the assistance of a Class Action Administrator.

34. Questions of law and fact common to the Plaintiff and Class Members that predominate over questions affecting only individual members, include, *inter alia*:

    a. Whether Plaintiff and Class Members entered into FARBAR Contracts with Sellers;

    b. Whether Defendant acted as a Closing Agent in connection with the FARBAR Contracts that Plaintiff and Class Members entered into with Sellers;

    c. Whether Defendant breached a duty of care owed to Plaintiff and Class Members as Buyers;

    d. Whether Defendant was grossly negligent by charging Plaintiff and Class Members a Closing Agent Closing Services Fee;

    e. Whether Defendant's conduct injured Plaintiff and the Class Members, and if so, the extent of the injury suffered by Plaintiff and Class Members;

    f. Whether Plaintiff and Class Members are entitled to declaratory relief; and

      g.   Whether Plaintiff and Class Members are entitled to any other relief, including injunctive relief.

35.    The claims asserted by Plaintiff in this action are typical of the claims of Class Members as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class is common to each of the Class Members.

36.    Plaintiff and Plaintiff's counsel will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiff's counsel has represented consumers in a wide variety of class actions where they were approved as class counsel.

37.    A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

38.    The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued regarding the management of this class action.

39.    Absent a class action, it would be highly unlikely that the representative Plaintiff or any other Class member would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

40.    The questions of law or fact common to the respective Class Members predominate over questions of law or fact affecting only individual members.

41. This predominance makes class action litigation superior to any other method available for a fair and efficient litigation of the claims at issue in this matter.

## COUNT I
### (Gross Negligence)

42. Plaintiff adopts and realleges paragraphs 1 through 41 as if fully set forth herein.

43. Defendant was the Closing Agent for Plaintiff's cash purchase of real property pursuant to the Contract.

44. Defendant owed a duty of care to Plaintiff and Class Members to act competently and diligently with regards to closing the sale between Buyers and Seller.

45. In performing Closing Services for the transaction, Defendant breached its duty of care to the Plaintiff in the process of closing the sale and acted with gross negligence, as Defendant either wholly failed to review Paragraph 9(c) of the Contract or recklessly disregarded the terms of Paragraph 9(c) of the Contract.

46. Consequently, Plaintiff and Class Members were charged a Closing Services Fee, despite the Contract stating that the Closing Services Fee would be charged to the Seller.

47. Defendant's conduct evidences a reckless indifference to the rights of Plaintiff and a failure to exercise even the slightest degree of care.

48. As a direct and proximate result of the Defendant's gross negligence, Plaintiff and Class Members have been damaged.

WHEREFORE, Plaintiff demands judgment for damages in the amount of the total Closing Services Fees paid by and charged to Plaintiff and Class Members, together with interest and costs and an award of attorney's fees as permitted pursuant to applicable common benefit law.

## COUNT II
### (Negligence)

49. Plaintiff adopts and realleges paragraphs 1 through 41 as if fully set forth herein.

50. Defendant was the Closing Agent for the subject real estate transaction.

51. Defendant owed a duty of care to Plaintiff and Class Members to act competently and diligently with regards to closing the sale between Buyers and Seller.

52. In performing Closing Services for the transaction, Defendant breached its duty of care to the Plaintiff in the process of closing the sale and acted with negligence, as Defendant failed to supervise and carry out the closing in a reasonable matter, in that Defendant either neglected to review Paragraph 9(c) of the Contract or disregarded the terms of Paragraph 9(c) of the Contract.

53. Consequently, Plaintiff was charged a Closing Services Fee, despite the Contract stating that the Closing Services Fee would be charged to the Seller.

54. Defendant's conduct evidences a failure to exercise reasonable care.

55. As a direct and proximate result of the Defendant's negligence, Plaintiff and Class Members have been damaged.

WHEREFORE, Plaintiff demands judgment for damages in the amount of the total Closing Services Fees paid by and charged to Plaintiff and Class Members, together with interest and costs and an award of attorney's fees as permitted pursuant to applicable common benefit law.

## COUNT III
### (Breach of Fiduciary Duty)

56. Plaintiff adopts and realleges paragraphs 1 through 41 as if fully set forth herein.

57. By virtue of its status as the closing or escrow agent in its relationship with the Plaintiff and Class Members, Defendant owed a fiduciary duty to Plaintiff and Class Members to deal in the utmost good faith and in the interest of the Buyers.

58. As Closing Agent, Defendant's fiduciary duty included the duty to conduct and supervise the closing in a non-negligent manner, and with honesty and in good faith.

59. Defendant breached its fiduciary duty by improperly representing on the Closing Statement that the Plaintiff and Class Members were responsible for payment of the Closing Services Fee and charging and collecting said Closing Services Fees from Plaintiff and Class Members.

60. As a direct and proximate result of Defendant's breach and dereliction of fiduciary duty, Plaintiff and Class Members have been damaged.

WHEREFORE, Plaintiff demands judgment for damages in the amount of the total Closing Services Fees paid by and charged to Plaintiff and Class Members, together with interest and costs and an award of attorney's fees as permitted pursuant to applicable common benefit law.

## COUNT IV
### (Declaratory Judgment)

61. Plaintiff adopts and realleges paragraphs 1 through 41 as if fully set forth herein.

62. This Court has jurisdiction over this action for Declaratory Relief pursuant to Fla. Stat. § 86.011.

63. As a Buyer in the real estate transaction that is the subject of this action, Plaintiff has a legal interest in, and there is doubt, as to whether Defendant was entitled under the Contract to charge Plaintiff a Closing Services Fee in connection with Plaintiff's purchase of the Property referenced in the Contract.

64. There is bona fide, justiciable controversy between the parties as to Defendant's entitlement to charge Plaintiff and Class Members a Closing Services Fee, and an actual, practical, and present need for a declaration.

65. Plaintiff's entitlement to a return of the Closing Services Fee improperly charged to Plaintiff is dependent on a declaration of facts, or the law applied to the facts of this dispute.

66. Plaintiff and Defendant have an actual, present adverse interest in the subject matter of the declaration requested, either in fact or law.

67. The relief sought is not seeking an advisory opinion from the Court.

WHEREFORE, Plaintiff requests a declaration that Defendant had and has no legal right under the terms of the Contract to charge Plaintiff and Class Members a Closing Services Fee for the subject transaction, declaring and ordering Plaintiff's and Class Members' entitlement to a refund of the Closing Services Fee paid by them, and for such other and further relief as the Court deems appropriate, including damages together with interest and costs, and an award of attorney's fees pursuant to applicable common benefit law.

## COUNT V
### (Unjust Enrichment)

68. Plaintiff adopts and realleges paragraphs 1 through 41 as if fully set forth herein.

69. This cause of action is pleaded as an alternative to Plaintiff's legal remedies alleged in this Complaint.

70. Plaintiff and Class Members conferred a benefit on Defendant, in that Defendant collected an improper and wrongful Closing Services Fee from Plaintiff and Class Members.

71. Defendant knew and appreciated that it charged and collected a Closing Services Fee from Plaintiff and Class Members, as Defendant prepared the Closing Statement and conducted and supervised the closing.

72. Defendant voluntarily accepted and retained the Closing Services Fees paid Plaintiff and Class Members.

73. As a direct and proximate result of the foregoing, Plaintiff has been damaged.

74. The circumstances render Defendant's retention of the Closing Services Fees paid by Plaintiff and Class Members inequitable and unfair unless Defendant returns the money that was improperly collected from Plaintiff and Class Members.

75. As a direct and proximate result of the foregoing, Plaintiff and Class Members have been damaged.

WHEREFORE, Plaintiff demands judgment for damages in the amount of the total Closing Services Fees paid by and charged to Plaintiff and Class Members, together with interest and costs and an award of attorney's fees as permitted pursuant to applicable common benefit law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all others similarly situated, prays for judgment and relief on all causes of action alleged above, as follows:

A. For an order certifying that this action may be maintained as a class action, certifying Plaintiff as representative of the Class, ordering Defendant to pay all costs associated with notice and administration of payment to the Class, and designating Plaintiff's attorneys as Class Counsel;

B. A declaration that Defendant's practice, collecting Closing Services Fees from Buyers in cash transactions under FARBAR Contracts, violates the rights of Buyers;

C. An injunction prohibiting Defendant from collecting Closing Services Fees from Buyers in cash transactions under FARBAR Contracts;

D. For an order requiring Defendant to pay full restitution to Plaintiff and all Class Members;

E. For an order requiring Defendant to disgorge all ill-gotten gains flowing from its unlawful and unfair business practices alleged in this Complaint;

F. For an award of actual damages in an amount to be determined at trial;

G. For an award of costs of this suit, including reasonable attorney's fees;

H. For an award of pre- and post-judgment interest on any amounts awarded; and

I. Providing such further relief as may be just, appropriate, or proper.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues so triable.

DATED: November 6, 2019

Respectfully Submitted,

By: */s/ Joshua H. Eggnatz*
Joshua H. Eggnatz, Esq. (FBN: 0067926)
E-mail: JEggnatz@JusticeEarned.com
**EGGNATZ | PASCUCCI**
7450 Griffin Road, Suite 230
Davie, FL 33328
Telephone: 954-889-3359
Facsimile: 954-889-5913

Seth M. Lehrman, Esq. (FBN: 132896)
E-mail: seth@epllc.com
**EDWARDS POTTINGER LLC.**
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: 954-524-2820
Facsimile: 954-524-2822

Richard B. Feinberg, Esq. (FBN: 802808)
E-mail: ricfeinberg@hotmail.com
**FLORIDA LEGACY LAW, LLC**
600 Cleveland Street, Suite 313
Clearwater, FL 33755
Telephone: 727 231-6400

*Attorneys for Plaintiff and the Putative Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| ANTAO PROPERTIES LLC, a Florida limited liability company, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>FIRST AMERICAN TITLE INSURANCE COMPANY.<br><br>　　　　Defendant. | CIVIL ACTION FILE NO. _____ |

**DECLARATION OF MICHAEL STOGDILL
IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL**

I, Michael Stogdill, hereby state, pursuant to 28 U.S.C. § 1746, that I have personal knowledge of the facts set forth herein, unless otherwise indicated, and if called upon, I would testify that:

1.　I am over the age of eighteen and am competent to execute this Declaration.

2.　I am a resident of the State of Florida.

3.　I currently am the Managing Director of the Mid-Atlantic Division of First American Title Insurance Company ("First American"), with responsibility over the State of Florida, among others. From 2014 to July 2019, I was the Florida

1

State Manager for First American, with direct oversight over all aspects of operations in Florida, including its closing services.

4. I have access to the business records and data for closings conducted by First American in the State of Florida from November 6, 2015 to the present. I also have knowledge of practices related to real estate transactions, including the use of form purchase and sale contracts throughout the State of Florida.

5. In preparing this declaration, I have relied on my knowledge and experience in the title insurance industry, knowledge of First American's policies and procedures, as well as my review of First American's business records, maintained under my supervision and control, which are kept and recorded in the regular course of First American's business, at or near the time of the act, transaction, occurrence or event.

6. I have reviewed the allegations in the Class Action Complaint filed on November 6, 2019 and understand that Plaintiff seeks to certify a class of buyers who paid closing fees in connection with certain cash purchase transactions that involved the FARBAR "AS IS" Residential Contract for Sale.

7. First American employees and I analyzed closing data and reports showing the number of cash transactions that may involve putative class members. Our analysis identified in excess of 19,000 implicated cash transactions. In

connection with these transactions, buyers were assessed in excess of $7 million in closing service fees.

      8.    Based on my experience in Florida, I know that the FARBAR contract at issue in Plaintiff's complaint is commonly used in Florida.

I declare under penalty of perjury that the foregoing is true and correct.

Date: Dec-11-2019

**Michael Stogdill**