## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

### CASE No.: 8:19-cv-03058-VMC-AAS

ANTAO PROPERTIES LLC, a
Florida limited liability company,
individually and on
behalf of all others similarly situated,

**CLASS REPRESENTATION**

*JURY TRIAL REQUESTED*

     *Plaintiff,*

vs.

FIRST AMERICAN TITLE
INSURANCE COMPANY,

     *Defendant.*

_____/

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT AND MOTION FOR LEAVE TO AMEND

Plaintiff, ANTAO PROPERTIES LLC ("Plaintiff"), through counsel and pursuant to all applicable *Federal Rules of Civil Procedure,* and Local Rule 3.01, hereby files this Response in Opposition to Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 34) ("Motion") and Motion for Leave to Amend, and states the following:

### I.     INTRODUCTION

Defendant seeks dismissal under Federal Rule of Civil Procedure 12(b)(7) for failure to join a necessary party, and under Rule 12(b)(6), for failure to state a claim.

Regarding Defendant's 12(b)(7) argument, although Plaintiff did jointly purchase the subject property with a co-buyer, Samir Kolar ("Mr. Kolar"), Mr. Kolar is not a necessary and "indispensable" party because Plaintiff, as the co-owner of the property, is authorized and permitted to pursue this action on behalf of their joint purchase and joint ownership. At best, Mr.

Kolar is permissive party under Rule 20 since he and Plaintiff are entitled to joint relief arising out of the same transaction with Defendant. Nevertheless, in an effort to streamline this litigation and avoid unneeded burden on the Court in resolving this issue, Plaintiff seeks leave to amend to join Mr. Kolar as an additional party Plaintiff.

 Regarding Defendant's 12(b)(6) argument, Defendant's Motion should be denied because Plaintiff has pleaded sufficient facts entitling it to relief.

First, the express and plain language of the Florida Association of Realtors and Florida Bar approved form ""AS IS" Residential Contract for Sale and Purchase" ("FARBAR Contract") clearly states that the Seller, not that Buyer, *shall* <u>designate</u> the Closing Agent *and* pay for the Closing Services. *See* Dkt. 5 at ¶ 13; Dkt. 5-1 at 4 ¶ 9. Pursuant to section 9(c)(i), *Seller picks and pays*. Defendant's effort to cobble together a different meaning is undermined by the plain language of the FARBAR Contract and is contrary to clearly established Florida law.

Second, to support Plaintiff's gross negligence claim (Count I), Plaintiff has alleged that Defendant either "wholly failed to review" or "recklessly disregarded" the terms of 9(c) of the FARBAR Contract, evidencing an "indifference to the rights of Plaintiff." *See* Dkt. 5 at ¶ 50-52. It is further alleged that Defendant "knew" it was not permitted to charge Plaintiff a Closing Services Fee. *Id*. at ¶ 24. These ultimate facts sufficiently establish that Defendant made the conscious or active decision to either not read, or to ignore what it did read – either scenario rises to the level of a grossly negligent act entitling Plaintiff to relief.

Third, Plaintiff has alleged unjust enrichment (Count IV) "as an alternative to Plaintiff's legal remedies." *See* Dkt. 5 at ¶ 74. Such alternative pleading is explicitly authorized under Rule 8(d) ("A party may set out 2 or more statements of a claim . . . alternatively . . . . A party may state as many separate claims . . . as it has, regardless of consistency"). Moreover, Defendant argues

that Plaintiff has no legal remedy – *if* that is ultimately established, then Plaintiff is entitled to pursue an equitable remedy. Further, in the Eleventh Circuit and in this District, a party may purse an unjust enrichment claim alongside legal claims. Last, while Plaintiff does not dispute that Defendant was entitled to charge a Closing Services Fee to Sellers – Defendant was unjustly enriched in the amount of the Closing Services Fees collected from *Buyers*. *See* Dkt. 5 at ¶ 78.

## II.    <u>FACTUAL SUMMARY OF THE CASE</u>

Plaintiff's case is straightforward and easy to understand. Defendant, as a Closing Agent, improperly charged and collected Closing Services Fees[1] from cash Buyers throughout the State of Florida. *See* Dkt. 5 at ¶ 1.

On or about November 14, 2017, Plaintiff, as the "Buyer," agreed to purchase property for cash from the owner ("Seller"), using the standardized form FARBAR Contract. *See* Dkt. 5 at ¶ 9-10, 12. Pursuant to the express and plain terms of section 9(c)(i) of the FARBAR Contract, the Seller was to pick the Closing Agent, and pay for the owner's title policy premium, title search, *and* closing services (collectively, "Owner's Policy and Charges"). *Id*. at ¶ 13-14; Dkt. 5-1 at 4 ¶ 9. Plaintiff was only required to pay for closing services "*related to* [a] lender's policy, endorsements, and loan closing." *Id*.   Since this was a cash transaction, there was no lender's policy, endorsements, or closing services performed of any kind in connection with a loan. Therefore, no Closing Services Fee should have been charged to Plaintiff and other cash Buyers. *See* Dkt. 5 at ¶ 16.

---

1.      ""**Closing Services**" means services performed by a [closing agent] . . . including, but not limited to, ***preparing documents necessary to close the transaction, conducting the closing, or handling the disbursing of funds*** related to the closing in a real estate closing transaction in which a title insurance commitment or policy is to be issued." Fla. Stat. § 627.7711(1)(a)

Defendant, by accepting the escrowed funds and agreeing to act as the Closing Agent, had a legal duty and contractually agreed to supervise, carry out the closing, and prepare the closing documents (ie: Closing Services) in accordance with the terms of the Buyer's and Seller's ("Parties") FARBAR Contract, including to only charge and collect Closing Services Fees from the escrowed monies in accordance with the FARBAR Contract. *Id.* ¶ 17. The FARBAR Contract specifically states that "[a]ny Closing Agent . . . receiving the Deposit . . . agrees by acceptance of them, to . . . hold same in escrow . . . and . . . subject to Collection, disburse them in accordance with the terms and conditions of this Contract." Dkt. 5-1 at 7 ¶ 13. Accordingly, the FARBAR Contract directs the Closing Agent to charge the Seller for Closing Services performed by the Closing Agent.

At closing, Defendant presented a Closing Statement, which was to be prepared in accordance with the Parties' instructions set forth in the FARBAR Contract. *See* Dkt. 5 at 20. As evidenced on the Closing Statement, although Defendant collected an authorized Closing Services Fee from the Seller, it also collected an unauthorized Closing Services Fee from Plaintiff. *See* Dkt. 5 at ¶ 21-22; Dkt. 34-2 at 1. Because Plaintiff and other cash Buyers were charged a Closing Services Fee despite the explicit FARBAR Contract language, Defendant improperly and unfairly collected monies from them that it was not authorized to collect. *See* Dkt. 5 at ¶ 22-23.

Defendant made the decision to charge and collect unauthorized Closing Services Fees from up to approximately 17,000 Florida homeowners. *See* Dkt. 5 at ¶ 24, 37. As a direct and proximate result of Defendant's conduct, Plaintiff and other cash Buyers ("Class Members") have been damaged in the total amount of the Closing Services Fees paid by and charged to them. *See* Dkt. 5 at ¶ 53, 60, 72, 79.

4

### III.  <u>LEGAL STANDARDS</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "For purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff and its allegations of material fact are taken as true."  *Romano v. Motorola, Inc.*, 2007 US Dist. LEXIS 86472, *2 (S.D. Fla. 2007) (citing *McReynolds v. Alabama Dept. of Youth Services,* 204 Fed. Appx. 819, 821 (11th Cir. 2006)).

Rule 8's pleading standard "does not require 'detailed factual allegations.'" *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (citing  *Iqbal,* 556 U.S. at 678). A pleading must simply "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Thus, "[a] motion to dismiss should be granted only if 'it appears beyond doubt that the plaintiffs can prove no set of facts in support of their allegations which would entitle them to relief.'" *Id.* (quoting *Roberts v. Florida Power & Light Co.,* 146 F.3d 1305, 1307 (11th Cir. 1998), cert. den., 525 U.S. 1139 (1999)).

"The threshold of sufficiency . . . is exceedingly low." *Del Monte Fresh Produce Co.* v. *Dole Food Co., Inc.,* 136 F.Supp.2d 1271, 1283 (S.D. Fla. 2001). "[T]his Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. *HR-Ease, Inc. v. EB Gateway, Inc.*, No. 8:15-CV-777-T-33EAJ, 2015 WL 13791721, at *2 (M.D. Fla. June 10, 2015) (citing *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990)). Applying these standards, Defendant's Motion to Dismiss should be denied in its entirety.

## IV.    LEGAL ARGUMENT

### 1)  First American Wrongfully Charged Plaintiff a Closing Services Fee

The gravamen of Plaintiff's claim is that First American wrongfully charged Plaintiff a "Closing Services Fee." In doing so, First American breached its duty to prepare the closing documents in accordance with the Parties' agreement. Indeed, the clear and unambiguous language of the FARBAR Contract required the Seller, and only the Seller, to pay for Closing Services. Even if the Contract was ambiguous, which Plaintiff disputes, any such ambiguity cannot be resolved at the pleading stage. Accordingly, First American's Motion should be denied.

### a)  Defendant Breached its Duty by Failing to Prepare the Closing Documents in Accordance with the Parties' Agreement.

The Florida Supreme Court has consistently held that "a closing agent owes a fiduciary duty to all of the principal parties involved in the closing." *Millette v. DEK Techs., Inc.*, No. 08-60639-CIV, 2011 WL 5331708, at *2 (S.D. Fla. Nov. 7, 2011) (citing *The Fla. Bar v. Joy,* 679 So.2d 1165, 1167 (Fla.1996).; *see also The Fla. Bar v. Hines*, 39 So. 3d 1196, 1200 (Fla. 2010).[2]

---

2.      "Despite Defendant's contrary argument, courts have interpreted Florida law to allow for the creation of a fiduciary relationship between a title insurance company acting as a closing agent or escrow agent and the buyer and seller." *Wall Street Mortgage Bankers, Ltd.*, v. *Attorneys Title Insurance Fund, Inc.*, 2008 WL 5378126, *3 (S.D. Fla. 2008); *See e.g. Askew v. AllState Title & Abstract Co., Inc.*, 603 So.2d 29, 31 (Fla. 2d DCA 1992) (finding that a title agent acting as a closing agent "has a fiduciary duty to both the buyer and the seller"); *Crowell v. Morgan Stanley Dean Witter Services, Co.*, 87 F.Supp.2d 1287, 1293 (S.D. Fla. 2000) (noting that an escrow agent has a fiduciary duty pursuant to the escrow agreement) *See also Charles v. Florida Foreclosure Placement Center, LLC*, 988 So. 2d 1157, 1161 (Fla. 3d DCA 2008) (stating that a closing agent owes a duty to act in a reasonable prudent manner); *See Land Title of Cent. Fla., LLC v. Jimenez,* 946 So.2d 90, 93 (Fla. 5th DCA 2006) (finding that a title insurance agency which acts as a closing agent owes a duty to conduct the closing in a reasonably prudent manner); *Sommers v. Smith & Berman, P.A.,* 637 So.2d 60, 61 (Fla. 4th DCA 1994) (same); *Askew v. Allstate Title & Abstract Co.,* 603 So.2d 29, 31 (Fla. 2d DCA 1992) ("It is well-established that a title insurance company acting as a closing agent has the duty to supervise a closing in a 'reasonably prudent manner.'" (quoting *Fla. S. Abstract & Title Co. v. Bjellos,* 346 So.2d 635, 636 (Fla. 2d DCA 1977))); *F.D.I.C. v. Prop. Transfer Servs., Inc.*, No. 12-80533-CV, 2013 WL 5535561, at *9 (S.D. Fla. Oct. 7, 2013) (citing *The Florida Bar v. Joy,* 679 So.2d 1165, 1167 (Fla.1996)

6

At a minimum, "[t]he law implies from the circumstances that an escrow agent (or closing agent) undertakes a *legal obligation* (1) to *know the provisions and conditions of the principal agreement* concerning the escrowed property, and (2) to exercise reasonable skill and ordinary diligence in holding and delivering possession of the escrowed property (i.e., to disburse the escrowed funds) *in strict accordance with the principals' agreement.*" *Millette*, 2011 WL 5331708, at *2 (citing *Hines*, 39 So.3d at 1200) (emphasis added).

Additionally, "it is well-established that a title insurance company acting as a closing agent has the duty to supervise a closing in a "reasonably prudent manner."" *Askew v. Allstate Title & Abstract Co.*, 603 So. 2d 29, 31 (Fla. Dist. Ct. App. 1992) (citing *Florida Southern Abstract & Title Co. v. Bjellos,* 346 So.2d 635 (Fla. 2d DCA 1977); *Hines*, 39 So. 3d at 1200. Furthermore, "a closing agent must inform its principal of all material facts relevant to the transaction." *F.D.I.C. v. Prop. Transfer Servs., Inc.*, No. 12-80533-CV, 2013 WL 5535561, at *9 (S.D. Fla. Oct. 7, 2013) (citing *Sudbury v. Lowke,* 403 So.2d 1117, 1119 (Fla. 5th DCA 1981).

Here, Plaintiff alleges that Defendant failed to prepare the closing documents (i.e.: the Closing Statement) in accordance with the Parties' agreement, as reflected in the FARBAR Contract, resulting in improper Closing Services Fees being collected from Buyers. *See* Dkt. 5 at ¶ 19-23. Like in *Askew*, "[Defendant] ha[d] a duty to prepare the closing documents in accordance with the contract for sale. [But] [t]his was not done here." 603 So. 2d at 31.

---

("a closing agent owes a fiduciary duty to the parties involved in the sales transactions"). In addition, a closing agent must inform its principal of all material facts relevant to the transaction. *See Sudbury v. Lowke,* 403 So.2d 1117, 1119 (Fla. 5th DCA 1981) (citations omitted); *Fed. Deposit Ins. Corp. for IndyMac Bank, FSB v. Genesis Title Co., LLC*, No. 11-20841-CIV, 2011 WL 13223744, at *2 (S.D. Fla. July 1, 2011) ("a fiduciary duty can be created 'between a title insurance company acting as a closing agent or escrow agent and the buyer and seller.'")

In addition to the fiduciary duty imposed as a matter of law, because Defendant voluntarily accepted Plaintiff's escrowed funds, it assumed a duty to use reasonable care when preparing the closing documents and otherwise carrying out the closing (including charging and disbursing the escrowed funds) in accordance with the Parties' FARBAR Contract. *See Bank of Am., N.A. v. Zaskey*, No. 9:15-CV-81325, 2016 WL 2907732, at *2 (S.D. Fla. May 18, 2016). "A common law duty may arise 'from the general facts of the case' where 'a foreseeable zone of risk aris[es] from the acts of the defendant.'" *Id.* (citing *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1228 (Fla. 2010); *see also Clay Elec. Co-op, Inc. v. Johnson*, 873 So. 2d 1182, 1185-86 (Fla. 2003). Here, Defendant assumed a duty to use reasonable care when it "undertook to hold funds belonging to someone else." *Id.* (citing *Nat'l Title Ins. Co. v Lakeshore 1 Condo. Ass'n*, 691 So. 2d 1104, 1106 (Fla. 3d DCA 1997).

Moreover, even putting aside the controlling caselaw confirming that Defendant was required to conduct the closing in accordance with the Parties' agreement, the FARBAR Contract specifically provides as a material term that Defendant, as Closing Agent, "agrees . . . to [collect and] disburse [the escrowed funds] in accordance with the terms and conditions of this Contract." Dkt. 5-1 at 7 ¶ 13. In addition, "all *funds received* by a title insurance agent . . . shall be trust funds received in a fiduciary capacity," and "*shall not be subject to any debts of the title insurance agent* and shall be used only in accordance with the terms of the individual, escrow, settlement, or closing instructions. Fla. Stat. § 626.8473(2), (4).[3]

---

3.       *See also* Florida's Chief Financial Officer, Division of Insurance Agent and Agency Services, https://www.myfloridacfo.com/division/agents/compliance/titleagencies.htm (last visited Jan. 30, 2020) ("All funds received by a title insurance agent as escrow funds *shall* be trust funds received in a fiduciary capacity . . . and shall be the property of the person or persons entitled thereto. . . . [and] . . . shall not be subject to any debts of the title insurance agent and shall be used only in accordance with the terms of the individual, escrow, settlement, or closing instructions").

Pursuant to Florida statute, ""Closing Services" means services performed by a [closing agent] . . . including, but not limited to, *preparing documents necessary to close the transaction, conducting the closing, or handling the disbursing of funds* related to the closing in a real estate closing transaction in which a title insurance commitment or policy is to be issued." Fla. Stat. § 627.7711(1)(a).

Defendant, without any authority or legal basis, summarily concludes that the FARBAR Contract "was not intended to, and does not, define" the closing services and charges to be performed and allocated to Plaintiff and the Seller of the property. Dkt. 34 at 15. Defendant further suggests that the FARBAR Contract "does not govern the scope of services to be performed by closing agents," and implies that it may have "had [no] duty to prepare the closing documents in accordance with the FARBAR Contract." *Id.* at 15-16. Defendant's position is directly at odds with Florida Supreme Court precedent, Florida Statute, and the unambiguous terms of the FARBAR Contract. The Court should summarily dispel of Defendant's conclusory *ipse dixit* in this regard.

The caselaw cited *supra* and the FARBAR Contract imposed a duty on Defendant to prepare the closing documents and carry out the closing in accordance with the Parties' agreement. Plaintiff has alleged that Defendant breached that duty and, as a result, Plaintiff and Class Members have been improperly and unfairly charged monies by Defendant. *See* Dkt. 5 at ¶ 22-23.

**b)** **The Clear and Express Language of the FARBAR Contract Shows that Plaintiff was Improperly Charged a Closing Services Fee.**

"In construing the language of a contract, courts must look to the plain meaning and may only consider extrinsic evidence when the language is ambiguous." *Prop. Transfer Servs., Inc.*, WL 5535561, at *3 "'[W]here the essential terms of a contract are unambiguous the court will not look beyond the four corners of the document to determine the parties intent.'" *Id.* (finding that

the plain language a Closing Protection Letter did not support First American's interpretation in that case) (citing *Ellinger v. United States,* 470 F.3d 1325, 1338 (11th Cir. 2006) (internal quotation marks omitted); *see also Taylor v. Taylor,* 1 So.3d 348, 350 (Fla. 1st DCA 2009) (citing *Royal Oak Landing Homeowner's Ass'n, Inc. v. Pelletier,* 620 So.2d 786, 788 (Fla. 4th Dist.Ct.App.1993)) ("Contract interpretation begins with a review of the plain language of the agreement because the contract language is the best evidence of the parties intent at the time of the execution of the contract").

As with any other contract, the court's "goal is to effectuate the parties' intent." *BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co.,* 706 F. App'x 521, 524 (11th Cir. 2017) (citing *See Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1353 (11th Cir. 2014). Court's "look first to the plain language of the [contract], reading the words in the context of the entire agreement and seeking to give meaning to every term. *Id.* (citing *Alexandra H. v. Oxford Health Ins. Freedom Access Plan*, 833 F.3d 1299, 1306–07 (11th Cir. 2016)

Here, Defendant's assertion that it "followed the directions set forth by the parties to the contract"[4] and that the Seller was to only be charged for "closing services *related to the owner's policy*"[5] is undermined by the plain language of the FARBAR Contract. The supposed "*related to the owner's policy*" language serving as the basis for Defendant's defense is contained nowhere in the FARBAR Contract. It is manufactured language for purposes of Defendant's motion that the Court must not accept as true.

The FARBAR Contract unequivocally, and without qualification, states that the "owner's title policy premium, title search *and **closing services*** (collectively, "Owner's Policy and

---

4.    *See* Dkt. 34 at 15.
5.    *Id*.

Charges") *shall* be paid" by the Seller. *See* Dkt. 5 at ¶ 13-14; Dkt. 5-1 at 4 ¶ 9. The Plaintiff, as the Buyer, was only responsible to pay for closing services "*related to* [a] lender's policy, endorsements, and loan closing," which did not exist in this case. *Id*. Giving meaning to every term, the unambiguous and plain language of the FARBAR Contract shows that all charges for closing services *unrelated* to a loan were to be charged only to the Seller, which Defendant failed to do.

Paragraph 9(c)(i) unambiguously states that the Seller was required to pick the closing agent and pay for the Owner's Policy and Charges. By contractual definition, the Owner's Policy and Charges includes any fee for Closing Services. Therefore, Defendant collected a Closing Services Fee from Plaintiff contrary to the express terms of the FARBAR Contract.

### c) Any Ambiguity Cannot be Resolved at the Pleadings Stage.

"Should a contractual term be ambiguous—that is, reasonably susceptible to more than one meaning—then a reviewing court can consider extrinsic evidence to resolve the ambiguity. *BioHealth Med. Lab., Inc.*, 706 F. App'x at 524 (citing *See Adams v. Thiokol Corp.*, 231 F.3d 837, 844 (11th Cir. 2000). However, if a contract is ambiguous or if extrinsic evidence is required to resolve the ambiguity or the parties' intent, "[g]enerally courts may not engage in contract interpretation at the motion to dismiss stage . . . ." *California Fin., LLC v. Perdido Land Dev. Co.*, 303 F. Supp. 3d 1306, 1310 (M.D. Fla. 2017) (citing *Gullo v. Equifax Info. Servs. LLC*, No. 815CV01312EAKMAP, 2016 WL 3221735, at *3 (M.D. Fla. June 8, 2016); *see also HR-Ease, Inc.*, 2015 WL 13791721, at *2 ("A court may not engage in contract interpretation at the motion to dismiss stage . . .") (internal citations omitted); *see also BioHealth Med. Lab., Inc.*, 706 F. App'x at 524 ("There is at least ambiguity . . ., and that alone is sufficient to render discovery into extrinsic evidence essential before the contract can be definitively interpreted.") (citing *Geter v. Galardi S.*

*Enters., Inc.*, 43 F.Supp.3d 1322, 1328 (S.D. Fla. 2014) ("[T]he Court may not engage in contract interpretation at the motion to dismiss stage . . . .") (internal quotation omitted). *See also John M. Floyd & Assocs., Inc. v. First Fla. Credit Union*, 443 Fed.Appx. 396, 398 (11th Cir. 2011) (per curiam) (applying Florida law).

Defendant has proffered the *after-the-fact* explanation that Plaintiff was charged for closing services, "not all of which are addressed in the form FARBAR Contract,"[6] and states that "Plaintiff's allegation that First American violated some sort of duty by charging the Buyers a fee for services it performed that were not covered by the terms of the FARBAR Contract is simply not plausible on its face."[7] Putting aside the point that "closing services" is a statutorily defined term that is unambiguously used in the FARBAR Contract and Plaintiff's Closing Statement, common sense dictates that "closing services" refers to closing services. Moreover, "Florida Statutes defines closing services as the services . . . , including, but not limited to, preparing documents necessary to close the transaction, conducting the closing, or handling the disbursing of funds" and "[n]o other charges are authorized by the Florida Statutes."[8] Nevertheless, any suggestion that Plaintiff and Defendant had a separate agreement to pay for other services is well outside of the four corners of Plaintiff's Amended Complaint and not appropriate for consideration at this juncture.

Here, Plaintiff has proffered at least a reasonable interpretation of the FARBAR Contract and "it is not proper on a motion to dismiss to read out such contractual language . . . ." *BioHealth*

---

6.      *See* Dkt. 34 at 16
7.      *Id.*
8.      Florida's Chief Financial Officer, Division of Insurance Agent and Agency Services, https://www.myfloridacfo.com/division/agents/compliance/titleagencies.htm (Last visited Jan. 30, 2020).

*Med. Lab., Inc.*, 706 F. App'x at 524–25 ("Viewing the Assignment as a whole, the Laboratories' interpretation is plausible").

Moreover, while ultimately a factual inquiry, Defendant's interpretation lacks all credibility because the Closing Statement prepared by Defendant unequivocally evidences that Plaintiff was charged a "Closing Services Fee," not a fee for "primary title services" or any other services for that matter, as Defendant claims in its Motion. Dkt. 5-2 at 2. The Closing Service Fee charged to Plaintiff is the same line item as the Closing Service Fee charged to the Seller, further demonstrating that Plaintiff was charged a fee for Closing Services, not for some other unknown charge that Defendant did not disclose to Plaintiff and that it still has not disclosed up to this point of the litigation.

If the Court were to accept the assertions raised in Defendant's Motion as true, it means that Defendant had the presence of mind and knowledge that Closing Services were to be charged only to the Seller pursuant to the FARBAR Contract, yet it prepared the Closing Statement and presented it to Plaintiff to execute knowing that it was charging Plaintiff for other services not contemplated in the FARBAR Contract, and without obtaining prior permission and without a separate agreement to do so. That story lacks credibility for multiple reasons beyond the scope of this response. The act of preparing and delivering the Closing Statement to Plaintiff was a breach, and a cause of action accrued once the escrowed monies were disbursed improperly as a result of First American's conduct.

Clearly, "the Court would need to engage in contract interpretation" to reconcile these factual issues to ascertain the parties' intent, and Defendant's Motion should be denied on these grounds. *See HR-Ease, Inc.*, 2015 WL 13791721, at *2 (citing *Geter v. Galardi S. Enters., Inc.*, 43 F.Supp.3d 1322, 1328 (S.D. Fla. 2014)).

**2)  Plaintiff has Pleaded Sufficient Facts to Support Gross Negligence**

Defendant contends that Plaintiff's gross negligence claim requires dismissal with prejudice because Plaintiff did not plead the magic word "consciously." However, reciting "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is not adequate to survive a Rule 12(b)(6) motion to dismiss. *Chaparro*, 693 F.3d 1333 at 1337 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. Rather, "[t]o survive ... a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974).

Here, Plaintiff has alleged that Defendant either "wholly failed to review" or "recklessly disregarded" the terms of 9(c) of the FARBAR Contract, evidencing an "indifference to the rights of Plaintiff." *See* Dkt. 5 at ¶ 50-52. It is further alleged that Defendant "knew" it was not permitted to charge Plaintiff a Closing Services Fee. *Id*. at ¶ 24. These facts sufficiently establish that Defendant made the conscious or active decision to either not read, or to ignore what it did read (ie: Defendant had awareness of its actions or inaction) – either scenario rises to the level of a grossly negligent act entitling Plaintiff to relief. Ironically, had Plaintiff simply pleaded the word "consciously," Defendant would be arguing that the use of that word is just a mere label or conclusion.

Just as in *Zwyers*, where your Honor found that that plaintiff's factual allegations were sufficient to establish gross negligence, despite the operative complaint being completely devoid of the word "consciously" (or any other recitation of the elements), the Court should do the same here. *See Zwyers v. Target Corp.*, No. 809-CV-868-T-33TBM, 2009 WL 5127975, at *2 (M.D. Fla. Dec. 18, 2009) ("Gross negligence' means that the defendant's conduct was so reckless or

wanting in care that it constituted a conscious disregard *or* indifference to the life, safety, or rights of persons exposed to such conduct"); *Zwyers* Amended Complaint, at Dkt. 5.

### 3)  <u>Plaintiff has Properly Pleaded Unjust Enrichment Alongside its Legal Claims.</u>

First, Plaintiff has specifically alleged unjust enrichment "as an alternative to Plaintiff's legal remedies." *See* Dkt. 5 at ¶ 74. Such alternative pleading is explicitly authorized under Rule 8(d). Indeed, Fed. R. Civ. P. 8(d)(2)-(3) states, "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient. A party may state as many separate claims or defenses as it has, regardless of consistency." Defendant contends that Plaintiff has no legal remedy – *if* that is ultimately established, then Plaintiff is entitled to pursue an equitable remedy.

Second, the availability of Plaintiff's legal claims does not require dismissal of its unjust enrichment claim. *See State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714, 722 (11th Cir. 2011) (citing *Williams v. Bear Stearns & Co.*, 725 So. 2d 397, 400 (Fla. 5th DCA 1998)) ("It is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist. However, that rule does not apply to unjust enrichment claims."); *Harris v. Nordyne, LLC*, No. 14-CIV-21884, 2014 U.S. Dist. LEXIS 189248, at *20 (S.D. Fla. Nov. 13, 2014) (quoting *In re Horizon Organic Milk Plus DHA Omega-3 Marketing & Sales Practices Litigation*, 955 F. Supp. 2d 1311, 1337 (S.D. Fla. 2013), that "to the extent that a plaintiff has adequate legal remedies under theories of liability other than a claim of breach of an express contract, those remedies do not bar an unjust enrichment claim").

"Rather, it is only upon a showing that an express contract exists between the parties that the unjust enrichment . . . count fails." *State Farm Mut. Auto. Ins. Co. v. Altamonte Springs*

15

*Diagnostic Imaging, Inc.*, 2011 WL 6450769, at *5 (M.D. Fla. Dec. 21, 2011) (quoting *State Farm*, 427 F. App'x at 722); *Williams*, 725 So. 2d at 400 ("Until an express contract is proven, a motion to dismiss a claim for . . . unjust enrichment . . . is premature."); *See also Finerman v. Marriott Vacations Worldwide Corp.*, No. 3:14-CV-1154-J-32MCR, 2015 WL 5440611, at *3 (M.D. Fla. Sept. 15, 2015) (where this Court rejected the identical argument raised by Defendant here, that the plaintiffs "unjust enrichment count must be dismissed because he failed to allege that he did not have an adequate remedy at law).[9]

Here, there is no requirement for Plaintiff to allege "no remedy at law." Plaintiff has not alleged that an express contract exists between Plaintiff and Defendant, and Defendant affirmatively contends in its Motion that it "is not a party to this contract." *See* Dkt. 34 at 7. Thus, Plaintiff's unjust enrichment claim is properly pleaded alongside its legal claims. *See Massachusetts Mutual Life Ins. Co. v. Switlyk*, 8:13-cv-3243-T-33MAP, 2014 WL 3894342, *4 (M.D. Fla. Aug. 8, 2014) (where this Court confirmed there is no requirement to plead "no adequate remedy at law" in an unjust enrichment claim).

Third, as to Defendant's alternative argument regarding insufficient factual pleading, under Florida law, "[a] claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (citing

---

9.      *See also* Florida Supreme Court Standard Jury Instructions, 416.7 Contract Implied in Fact, *available at* https://jury.flcourts.org/contract-business-cases-4/contract-business-cases-instructions/ (confirming that "no adequate remedy at law" is not an element) (last visited Jan. 30, 2020).

*Florida Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004)). Plaintiff has adequately pleaded facts to support these elements.

While Plaintiff does not dispute that Defendant was entitled to charge a Closing Services Fee to the Seller – Defendant was not entitled to charge a Closing Services Fee *to Plaintiff*. Here, Defendant was unjustly enriched in the amount of the Closing Services Fees charged to Buyers. *See* Dkt. 5 at ¶ 77-79. In this action, Plaintiff alleges that the circumstances render Defendant's retention of the Closing Services Fees paid by Plaintiff and Class members inequitable, not the Closing Services Fees collected from Sellers. *Id.* If First American undercharged the Seller, as First American suggests, then it is still not justified in improperly charging Closing Services Fees to Plaintiff that were exclusively assigned to the Seller. Contrary to Defendant's argument, Plaintiff has alleged that the monies at issue are in the possession of the wrong party. ("Defendant voluntarily accepted and retained the Closing Services Fees paid by Plaintiff and Class Members, despite the Closing Services Fees not being authorized in the Contract . . . [,] the circumstances render Defendant's retention . . . inequitable and unfair unless Defendant returns the money . . . .") *Id*. at ¶ 77-78.

Plaintiff and other Buyers were charged and paid unauthorized Closing Services Fees to Defendant. Defendant collected and retained these Closing Services Fees from monies of Plaintiff and Buyers which it held in trust. By collecting an unauthorized Closing Services Fee, Plaintiff and other Buyers paid more than they bargained for. These circumstances render Defendant's retention of that money unjust. *See State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013).

## V.     LEAVE TO AMEND SHOULD BE GRANTED

While Plaintiff has amended once, it was following Defendant's Notice of Removal from state court. Plaintiff filed its Amended Complaint to ensure that jurisdictional and venue issues were properly pleaded for this Court, to incorporate additional factual detail based, in part, on new information contained in Defendant's removal papers, and to voluntarily eliminate a cause of action in an effort to narrow the issues. Plaintiff did not amend as a result of Defendant's efforts or a prior motion to dismiss. As a practical matter, should the Court grant leave, it will be Plaintiff's first amendment to cure alleged deficiencies.

First, while Plaintiff believes that Plaintiff's co-buyer, Mr. Kolar is merely a permissive party under Rule 20, to avoid unneeded judicial labor on this issue, Plaintiff seeks leave to amend to join Mr. Kolar as an additional party Plaintiff.

Second, in the event the Court finds that any of Plaintiff's claims are insufficiently pleaded, dismissal should be without prejudice and with leave to amend. Pursuant to Fed. R. Civ. P. 15(a), leave to amend should "'be freely given when justice so requires;' this mandate is to be heeded."[10] "Timely motions for leave to amend are held to a very liberal standard." *Regions Bank v. Lynch*, No. 2:08-CV-31-FTM-34SPC, 2008 WL 11335033, at *1 (M.D. Fla. Apr. 23, 2008).

In addition to adding Mr. Kolar as a party plaintiff, Plaintiff should be permitted to amend other allegations as well to cure any deficiencies, and to otherwise timely add additional allegations or claims as Plaintiff deems proper.  Based on the generous nature of granting leave to amend, it

---

10.      *Foman v. Davis*, 371 U.S. 178, 182 (U.S. 1962) (citing 3 Moore, Federal Practice (2d ed. 1948), paras. 15.08, 15.10); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 701 (9th Cir. 1988). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.,—the leave sought should, as the rules require, be 'freely given.'" *Foman*, 371 U.S. at 182 (1962); *See also Espey v. Wainwright*, 734 F. 2d 748 (11th Cir. 1984).

is appropriate in this matter to allow amendment and for any dismissal to be without prejudice. The standard is simply that the court must be able to "conceive of facts" that would make the claim a viable one.  Here, it is conceivable that if a dismissal is granted with respect to Plaintiff's claims, that amendment would be not only conceivable, but very probable.

WHEREFORE, Plaintiff seeks leave to file a Second Amended Complaint after the Court's ruling on Defendant's Motion.

## V.    REQUEST FOR HEARING

Pursuant to M.D. Fla. L.R. 3.01(j), should the Court deem appropriate, Plaintiff respectfully requests a hearing on this matter. The estimated time for oral argument is 45 minutes.

DATED: January 30, 2020                    Respectfully Submitted,

By:    */s/ Joshua H. Eggnatz*
Joshua H. Eggnatz, Esq. (FBN: 0067926)
E-mail: JEggnatz@JusticeEarned.com
EGGNATZ | PASCUCCI
7450 Griffin Road, Suite 230
Davie, FL 33314
Telephone: 954-889-3359
Facsimile: 954-889-5913

Seth M. Lehrman, Esq. (FBN: 132896)
E-mail: seth@epllc.com
EDWARDS POTTINGER LLC.
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: 954-524-2820
Facsimile: 954-524-2822

Richard B. Feinberg, Esq. (FBN: 802808)
E-mail: ricfeinberg@hotmail.com
FLORIDA LEGACY LAW, LLC
600 Cleveland Street, Suite 313
Clearwater, FL 33755
Telephone: 727 231-6400

*Trial Counsel for Plaintiff and the Putative Class*

19

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was served via CM/ECF this 30th day of January, 2020, to the following on the service list: below:

Jacqueline R. A. Root, Esquire
Florida Bar No.: 085700
PENNINGTON P.A.
2701 N. Rocky Point Drive – Suite 900
Tampa, FL 33607-5975
Phone: (813) 549-4146
E-mail: jroot@penningtonlaw.com

Elizabeth T. Ferrick (pro hac pending)
Grant Ankrom (pro hac pending)
DENTONS US LLP
One Metropolitan Square
211 N Broadway Suite 3000
St. Louis, MO 63102
Phone: (314) 241-1800
E-mail: elizabeth.ferrick@dentons.com
grant.ankrom@dentons.com

*Trial Counsel for Defendant First American*
*Title Insurance Company*