## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

### CASE No.: 8:19-cv-03058-VMC-AAS

ANTAO PROPERTIES LLC, a
Florida limited liability company, and
SAMIIR KOLAR, individually, and
on behalf of all others similarly
situated,

     *Plaintiffs*,

vs.

FIRST AMERICAN TITLE
INSURANCE COMPANY,

     *Defendant*.

_____/

**CLASS REPRESENTATION**

*JURY TRIAL REQUESTED*

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs, ANTAO PROPERTIES LLC and SAMIR KOLAR (hereinafter "Plaintiffs"), bring this class action under Rule 23 of the Federal Rules of Civil Procedure, hereby sue Defendant, FIRST AMERICAN TITLE INSURANCE COMPANY (hereinafter "Defendant"), on behalf of themselves and all others similarly situated, and allege as follows:

1.    This case arises from closing fees improperly charged and collected by Defendant from buyers of real estate transactions throughout the State of Florida.

2.    This action is brought on behalf of Plaintiffs and all others similarly situated (collectively "Buyers"), pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4), seeking declaratory relief, injunctive relief, and/or damages in excess of Five-Million Dollars ($5,000,000.00), exclusive of interest, costs, and attorneys' fees.

## THE PARTIES, JURISDICTION AND VENUE

3.     Plaintiff, ANTAO PROPERTIES LLC, is a single member Florida limited liability company. It's single individual member, Edward Antao, is a resident of Florida.

4.     Plaintiff, SAMIR KOLAR, an individual, is a resident of Florida.

5.     Defendant, a licensed title agency (hereinafter "Closing Agent"), is a foreign company licensed and registered to do business in Florida, having offices located throughout the State of Florida, including at 2370 Drew Street, Suite A, Clearwater, Florida 33765. Defendant lists its registered agent as Chief Financial Officer, 200 E. Gaines Street, Tallahassee, Florida 32399.

6.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Based on information and belief, and the information provided by Defendant in its Notice of Removal, the size of the Class includes up to approximately 19,000 Class Members. Defendant's business records reflect that the potential recovery to the proposed class maybe as much as $7 million. At least some members of the proposed Class have a different citizenship from Defendant.

7.     Personal jurisdiction exists because Defendant operates, conducts, engages in, and carries on its business in this state, and the facts giving rise to Defendant's alleged wrongful conduct occurred in this State.

8.     Venue exists pursuant to 28 U.S.C. § 1391(b) because Plaintiffs' causes of action accrued in this judicial district. Defendant conducts business in Pinellas County, Florida, and the events, acts, breaches, misrepresentations, and/or omissions giving rise to Plaintiffs' causes of action occurred in Pinellas County.

9.      Defendant and its employees, subsidiaries, affiliates, and other related entities, were, at all times relevant herein, agents, servants and employees of each other, and at all times herein mentioned, each was acting within the purpose and scope of said agency and employment. Whenever reference in this Complaint is made to any act or transaction of Defendant, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of Defendant committed, knew of, performed, authorized, ratified and/or directed such act or transaction on behalf of Defendant, while actively engaged in the scope of their duties.

## FACTS COMMON TO ALL CLAIMS

10.     On or about November 14, 2017, Plaintiffs entered into a real estate purchase and sale contract (hereinafter "Contract") with the owner (hereinafter "Seller") of certain real estate located in Pinellas Florida (hereinafter "Property"). Pursuant to the terms of the Contract, Plaintiffs agreed to pay cash for the Seller's Property. Accordingly, the Contract was between Plaintiffs, as the "Buyer," and the owners, as the "Seller."

11.     The Contract is a standardized form known as the "'AS IS' Residential Contract for Sale and Purchase" approved by the Florida Association of Realtors and Florida Bar. (hereinafter "FARBAR Contract").

12.     A redacted and highlighted copy of the Contract is attached hereto as **Exhibit "A"**.

13.     Pursuant to Paragraph 8(a) of the Contract, Plaintiffs agreed to pay cash for the Property.

14.     Paragraph 9 of the Contract states in relevant part:

**9.**      **CLOSING COSTS; TITLE INSURANCE** . . .

**(a)**      **COSTS TO BE PAID BY SELLER:**

***

- Owner's Policy and Charges (if Paragraph 9(c)(i) is checked

***

(c)   TITLE EVIDENCE AND INSURANCE: At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked, then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a copy shall be furnished to Buyers and Closing Agent within 5 days after Effective Date. **The owner's title policy premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set forth below.** The title insurance premium charges for the owner's policy and any lender's policy will be calculated and allocated in accordance with Florida law, but may be reported differently on certain federally mandated closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded liens imposed pursuant to Chapters 159 or 170, F.S., in favor of any governmental body, authority or agency.
(CHECK ONE):
 **x (i)** *Seller shall* **designate Closing Agent and** *pay for Owner's Policy and Charges*, and Buyer shall pay the premium for Buyer's lender's policy and charges for closing services *related to* the lender's policy, endorsements and loan closing, which amounts shall be paid by Buyer to Closing Agent or such other provider(s) as Buyer may select; (emphasis added) . . .

15.    Pursuant to Paragraph 9(c) of the Contract, the owner's title policy premium, title search and **title agent closing services** (collectively, "Owner's Policy and Charges") were to be charged to either the Buyer or Seller consistent with the terms and instructions of the Contract.

16.    The Buyer and Seller agreed to the option reflected in Paragraph 9(c)(i) of the Contract, which specifies that the **Seller** "**shall** designate Closing Agent and **pay for Owner's Policy and Charges**".

17.     Pursuant to Paragraph 9(c)(i), charges and fees are only to be paid by the Buyer in the event the transaction is being financed by a lender. Since the Contract here was an all-cash transaction with no lender, Plaintiffs were not responsible for any loan or title agent closing fees, title policy premiums or lender endorsements.

18.     The Seller designated Defendant to be the Closing Agent for the procurement of title insurance and to perform closing services ("Closing Services") in connection with the transaction.  Defendant accepted this designation and by doing so, agreed to supervise and carry out the closing in accordance with the terms of the Contract, including to only charge and collect fees from monies in escrow in accordance with the Contract.

19.     Defendant performed Closing Services in connection with the transaction for which Defendant charged a fee ("Closing Services Fee").

20.     The Contract provided that the Closing Services Fee would only be charged to, and collected from, the Seller. Because the sale was a cash transaction, there was no lender's policy, endorsement or related loan closing services, so Defendant should not have charged Plaintiffs a Closing Services Fee.

21.     At closing, Defendant presented a settlement disclosure statement a/k/a HUD ("Settlement Statement") detailing the receipts and disbursements made on Plaintiffs' account, including the allocation of Defendant's Closing Services Fee, which was to be prepared in accordance with the Contract's instructions. A redacted and highlighted copy of the Settlement Statement is attached hereto as **Exhibit "B"**.

22.     As indicated on the Settlement Statement, an authorized Closing Services Fee was charged to the Seller, but an *unauthorized* Closing Services Fee in the amount of $150.00 was also improperly charged by Defendant to Plaintiffs.

23.     This amount was charged to Plaintiffs' account despite the explicit language in the Contract stating that "Seller shall . . . pay for Owner's Policy and Charges," which, by definition, included Defendant's Closing Services Fee.

24.     Defendant made the decision to prepare and present the Settlement Statement to Plaintiffs with a Closing Services Fee being assessed to Plaintiffs, and to take from Plaintiffs the Closing Services Fee reflected in same.

25.     At the time Defendant presented the Settlement Statement to Plaintiffs, Defendant did not disclose to Plaintiffs that a Closing Services Fee was only supposed to be paid by the Seller pursuant to the Contract.

26.     Plaintiffs and Class Members relied on Defendant to prepare all closing documents, including the Settlement Statement, in accordance with their respective Contracts with Sellers.

27.     Plaintiffs believed that the Settlement Statement, including all charges, receipts, and disbursements reflected on same, was prepared in accordance with Plaintiffs' and the Seller's agreement reflected in the Contract.

28.     At the time Plaintiffs and Class Members signed their Settlement Statements they did so under a mistake of fact that the charges, receipts, and disbursements in their Settlement Statements were allocated, charged, and calculated correctly in accordance with their Contracts with Sellers.

29.     Consequently, Plaintiffs and Class Members have been improperly and unfairly charged monies by the Defendant Closing Agent, which Defendant was not authorized to collect from Plaintiffs and Class Members.

30.     Defendant knew or should have known that it was not permitted to charge Plaintiffs a Closing Services Fee.

31.     All conditions precedent to this action have occurred.

32.     Plaintiffs have retained the undersigned attorneys and is obligated to pay said attorney a reasonable attorney's fee.

## CLASS REPRESENTATION ALLEGATIONS

33.     Plaintiffs re-allege and incorporate by reference all allegations set forth in the preceding paragraphs of this Complaint, as if fully set forth verbatim herein.

34.     Plaintiffs bring this class action under Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4) on behalf of himself and on behalf of a similarly situated "Class" or "Class Members."

35.     The prerequisites set forth in Federal Rule of Civil Procedure 23(a) have been met in order to maintain this matter as a class action because "(1) the members of the class are so numerous that separate joinder of each member is impracticable, (2) the claim or defense of the representative party raises questions of law or fact common to the questions of law or fact raised by the claim or defense of each member of the class, (3) the claim or defense of the representative party is typical of the claim or defense of each member of the class, and (4) the representative party can fairly and adequately protect and represent the interests of each member of the class."

36.     Plaintiffs bring this class action individually, and on behalf of a putative class of similarly situated Buyers, and seek class certification of the claims and issues pleaded in this Complaint, on behalf of the Class defined as follows:

> **All Buyers in all cash real estate sale transactions in Florida, that used an "AS IS" Residential Contract for Sale and Purchase form approved by the Florida Bar and Florida Association of Realtors, that selected sub-paragraph (i) of section 9(c), but who were charged and paid a Closing Agent Closing Services Fee, during the four years precedent to the date of filing the Complaint, through and until the date Notice is provided to the Class.**

37.     Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded

from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

38.    Plaintiffs hereby reserve the right to amend or modify the class definition with greater specificity or division after having had an opportunity to conduct discovery.

39.    All Class Members were and are similarly affected by Defendant's conduct and business practice because they all were cash Buyers who were supposed to only  be charged consistent with section 9(c)(i) of the uniform and standardized FARBAR Contract, but who were all nonetheless charged and paid Closing Services Fees inconsistent with the terms of the FARBAR Contract.

40.    This matter is appropriate for a class action pursuant to Federal Rule of Civil Procedure 23(b)(1), because "the prosecution of separate claims or defenses by or against individual members of the Class would create a risk of either: (A) inconsistent or varying adjudications concerning individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications concerning individual members of the class which would, as a practical matter, be dispositive of the interests of other members of the Class who are not parties to the adjudications, or substantially impair or impede the ability of other members of the Class who are not parties to the adjudications to protect their interests."

41.    A class action is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2), which states: "the party opposing the class has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate." Here, Defendant's consistent business practice affects all Class Members, including Buyers who may use Defendant as their

Closing Agent at the selection of Sellers in the future. Therefore, Defendant's wrongful business practice is continuing and on-going, making injunctive and declaratory relief appropriate to the Class as a whole.

42.     In the alternative, a class action is proper pursuant to Federal Rule of Civil Procedure 23(b)(3), because questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any question of law or fact affecting only individual members of the class, and class representation is superior to other available methods for the fair and efficient adjudication of the controversy. Here, no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual Plaintiffs may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and Class Members are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable. Individual litigation by each Class Member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

43.     Based on the estimated number of all cash land sale transactions throughout Florida and investigation of counsel, it is readily apparent that the number of Buyers is so large as to make joinder impractical. Based on information and belief, and the information provided Defendant in its Notice of Removal, the size of the Class includes up to approximately 17,000 Class Members.

Nevertheless, despite the estimated size of the Class, Class Members may be notified of the class certification and pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice through the assistance of a Class Action Administrator. Defendant maintains business records of all the real estate transactions in which it served as the Closing Agent. All proposed Class Members are readily ascertainable by records maintained by Defendant.  Using this information, the Class Members can be identified and their contact information ascertained for purposes of providing notice to the Class.

44.    Questions of law and fact common to the Plaintiffs and Class Members that predominate over questions affecting only individual members, include, *inter alia*:

a.    Whether Plaintiffs and Class Members entered into FARBAR Contracts with Sellers;

b.    Whether Defendant acted as a Closing Agent in connection with the FARBAR Contracts that Plaintiffs and Class Members entered into with Sellers;

c.    Whether Defendant breached a duty of care owed to Plaintiffs and Class Members as Buyers;

d.    Whether Defendant was negligent by charging Plaintiffs and Class Members a Closing Agent Closing Services Fee;

e.    Whether Defendant was grossly negligent by charging Plaintiffs and Class Members a Closing Agent Closing Services Fee;

f.    Whether Defendant breached its fiduciary duty by charging Plaintiffs and Class Members a Closing Agent Closing Services Fee;

g.   Whether Defendant has been unjustly enriched by charging Plaintiffs and Class Members a Closing Agent Closing Services Fee;

h.   Whether Defendant's conduct constitutes an unfair or deceptive business practice;

i.   Whether Defendant's conduct injured Plaintiffs and the Class Members, and if so, the extent of the injury suffered by Plaintiffs and Class Members; and

j.   Whether Plaintiffs and Class Members are entitled to any other relief, including injunctive relief.

45.   The claims asserted by Plaintiffs in this action are typical of the claims of Class Members as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class is common to each of the Class Members.

46.   Plaintiffs and Plaintiffs' counsel will fairly and adequately represent and protect the interests of the Class. Plaintiffs has retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiffs' counsel has represented consumers in a wide variety of class actions where they were approved as class counsel.

47.   A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

48.   The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued regarding the management of this class action.

49.     Absent a class action, it would be highly unlikely that the representative Plaintiffs or any other Class member would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed the expected individual recovery.

50.     The questions of law or fact common to the respective Class Members predominate over questions of law or fact affecting only individual members.

51.     This predominance makes class action litigation superior to any other method available for a fair and efficient litigation of the claims at issue in this matter.

52.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

## COUNT I
### (Gross Negligence)

53.     Plaintiffs adopt and reallege paragraphs 1 through 52 as if fully set forth herein.

54.     Defendant was the Closing Agent for Plaintiffs' cash purchase of real property pursuant to the Contract.

55.     Defendant owed a duty of care to Plaintiffs and Class Members to act competently and diligently with regards to closing the sale between Buyers and Seller, including a duty to supervise and carry out the closing in accordance with the terms and instructions of the Contract.

56.     In performing Closing Services for the transaction, Defendant breached its duty of care to the Plaintiffs in the process of closing the sale and acted with gross negligence, as Defendant either wholly failed to review Paragraph 9(c) of the Contract or recklessly disregarded the terms of Paragraph 9(c) of the Contract when allocating and charging costs to the Buyer and Seller.

57.     As a result of Defendant's breach, Plaintiffs and Class Members were charged a Closing Services Fee, despite the Contract stating that the Closing Services Fee would be charged only to the Seller.

58.     Defendant made the conscious or active decision to either not read, or to ignore what it did read in the Contract.  Defendant was aware of its actions of charging Plaintiffs and Class Members a Closing Services Fee.

59.     Defendant's conduct evidences a reckless indifference to the rights of Plaintiffs and Class Members, a failure to exercise even the slightest degree of care, and a conscious disregard or indifference to the rights of Plaintiffs and Class Members.

60.     As a direct and proximate result of the Defendant's gross negligence, Plaintiffs and Class Members have been damaged in the amount of the Closing Service Fee paid by and charged to Plaintiffs and Class Members.

WHEREFORE, Plaintiffs demand judgment for damages in the amount of the total Closing Services Fees paid by and charged to Plaintiffs and Class Members, together with interest and costs and an award of attorney's fees as permitted pursuant to applicable common benefit law.

## COUNT II
### (Negligence)

61.     Plaintiffs adopt and reallege paragraphs 1 through 52 as if fully set forth herein.

62.     Defendant was the Closing Agent for the subject real estate transaction.

63.     Defendant owed a duty of care to Plaintiffs and Class Members to act competently and diligently with regards to closing the sale between Buyers and Seller, including a duty to supervise and carry out the closing in accordance with the terms and instructions of the Contract.

64.     In performing Closing Services for the transaction, Defendant breached its duty of care to the Plaintiffs in the process of closing the sale and acted with negligence, as Defendant

failed to supervise and carry out the closing in a reasonable matter, in that Defendant either neglected to review Paragraph 9(c) of the Contract or disregarded the terms of Paragraph 9(c) of the Contract when allocating and charging costs to the Buyer and Seller.

65.     As a result of Defendant's breach, Plaintiffs and Class Members were charged a Closing Services Fee, despite the Contract stating that the Closing Services Fee would be charged only to the Seller.

66.     Defendant's conduct evidences a failure to exercise reasonable care.

67.     As a direct and proximate result of the Defendant's negligence, Plaintiffs and Class Members have been damaged in the amount of the Closing Service Fee paid by and charged to Plaintiffs and Class Members.

WHEREFORE, Plaintiffs demand judgment for damages in the amount of the total Closing Services Fees paid by and charged to Plaintiffs and Class Members, together with interest and costs and an award of attorney's fees as permitted pursuant to applicable common benefit law.

## COUNT III
### (Breach of Fiduciary Duty)

68.     Plaintiffs adopt and reallege paragraphs 1 through 52 as if fully set forth herein.

69.     By virtue of its status as the closing or escrow agent for the Buyer and Seller, Defendant owed a fiduciary duty to the contracting parties to deal in the utmost good faith, to refrain from self-dealing, and to act in the best interest of the Buyer and Seller.

70.     In addition to the fiduciary duty imposed by law, pursuant to Fla. Stat. § 626.8473(2), (4) "all *funds received* by a title insurance agent . . . shall be trust funds received in a fiduciary capacity," and "*shall not be subject to any debts of the title insurance agent* and shall be used only in accordance with the terms of the individual, escrow, settlement, or closing instructions. Fla. Stat. § 626.8473(2), (4).

71.     Defendant's fiduciary duty, as a closing agent, included the duty to conduct and supervise the closing in accordance with the terms and instructions of the Contract.

72.     The Contract specified how the Closing Services Fees were to be allocated and to whom they were to be charged.

73.     Defendant, as Closing Agent, had a duty to comply with the terms of the Contract, including a duty to charge and collect Closing Services Fees from Plaintiffs and Class Members in accordance with the Contract's instructions.

74.     Defendant, as Closing Agent, by accepting Plaintiffs' and Class Members' funds, and agreeing to act as Closing Agent, had a duty to charge and collect the Closing Services Fees in accordance with the Contract.

75.     Defendant breached its fiduciary duty by failing to conduct and supervise the closing in accordance with the terms of the Contract by improperly charging and collecting Closing Services Fees from Plaintiffs and Class Members.

76.     Defendant, as a fiduciary, acquired influence and trust over Plaintiffs and Class Members. Plaintiffs and Class Members depended on Defendant to conduct the closing in accordance with the Contract.

77.     Defendant breached and abused its position of trust and influence with Plaintiffs and Class Members by charging Closing Fees to Buyers when it was not authorized to do so under the Contract.

78.     Defendant's improper charging and collecting of Closing Services Fees from Plaintiffs and Class Members is unfair and deceptive to Buyers because it is inconsistent with the express terms of the Contract, which Defendant, as Closing Agent, accepted by agreeing to be the

Closing Agent for Plaintiffs and Class Members' cash real estate closings.  Defendant's unfair and deceptive charging and collecting of Closing Services Fess from Buyers constitutes a breach of the fiduciary duty owed to Plaintiffs and Class Members.

79.     Defendant's breach of their fiduciary duty to Plaintiffs caused Plaintiffs to suffer direct and real harm through Defendant charging Plaintiffs an improper fee and wrongfully collecting this improper fee from Plaintiffs' monies that Defendant was holding in trust.

80.     As a direct and proximate result of Defendant's breach and dereliction of fiduciary duty, Plaintiffs and Class Members have been damaged in the amount of the Closing Service Fee paid by and charged to Plaintiffs and Class Members.

WHEREFORE, Plaintiffs demand judgment for damages in the amount of the total Closing Services Fees paid by and charged to Plaintiffs and Class Members, together with interest and costs and an award of attorney's fees as permitted pursuant to applicable common benefit law.

**COUNT IV**
**<u>(Unjust Enrichment)</u>**

81.     Plaintiffs adopt and reallege paragraphs 1 through 52 as if fully set forth herein.

82.     This equitable cause of action is pleaded as an alternative to Plaintiffs' legal remedies alleged in this Second Amended Complaint if it is found that Plaintiffs have no remedy at law.

83.     Plaintiffs and Class Members conferred a benefit on Defendant, in that Defendant charged and collected an improper and wrongful Closing Services Fee from Plaintiffs and Class Members.

84.     Defendant knew and appreciated that it charged and collected a Closing Services Fee from Plaintiffs and Class Members, as Defendant made the decision to charge Plaintiffs and

Class Members a Closing Service Fees when it prepared the Settlement Statement and conducted and supervised the closing.

85.     Defendant voluntarily accepted and retained the Closing Services Fees paid Plaintiffs and Class Members, despite the Closing Services Fees not being authorized in the Contract.

86.     Instead of receiving the benefits they already contracted for, Plaintiffs and Class Members all paid more money than they bargained for by being charged an unauthorized Closing Services Fee that was conferred on Defendant.

87.     In the end, by collecting an unauthorized Closing Services Fee, Plaintiffs and Class Members paid more than they bargained for.

88.     Here, the circumstances render Defendant's retention of the Closing Services Fees paid by Plaintiffs and Class Members inequitable and unfair unless Defendant returns the money that was improper collected from Plaintiffs and Class Members.

89.     The Closing Services Fees paid by Plaintiffs and Class Members in hands of Defendant should be returned to Plaintiffs and Class Members.

90.     As a direct and proximate result of the foregoing, Plaintiffs and Class Members have been damaged in the amount of the Closing Service Fee paid by and charged to Plaintiffs and Class Members.

WHEREFORE, Plaintiffs demand judgment for damages in the amount of the total Closing Services Fees paid by and charged to Plaintiffs and Class Members, together with interest and costs and an award of attorney's fees as permitted pursuant to applicable common benefit law.

## COUNT V
## (Florida Deceptive And Unfair Trade Practices Act)

91.     Plaintiffs adopt and reallege paragraphs 1 through 52 as if fully set forth herein.

92.     Under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. *See* Fla. Stat. §501.211

93.     Fla. Stat. §501.211 grants a private right of action for violations of FDUTPA.

94.     The primary policy of FDUTPA is "[t]o protect the consuming public…from those who engage in … unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce" and as a rule of construction, the FDUTPA statutes "shall be construed liberally to promote [such] policies…" *See* Fla. Stat. §501.202.

95.     At all relevant times, Plaintiffs and Class Members were "consumers" as defined by section Fla. Stat. §501.203 (7).

96.     Defendant was at all relevant times engaged in trade or commerce as defined in Fla. Stat. §501.203.

97.     Anyone aggrieved by a violation of FDUTPA "may bring an action to obtain a declaratory judgment that an act or practice violates [FDUTPA]." ("Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part"). *See* Fla. Stat. §501.211(1).

98.     Any person who has suffered a loss as a result of a violation of FDUTPA "may recover actual damages, plus attorney's fees and court costs." *See* Fla. Stat. §501.211(2).

99.     Defendant's business practice of charging Buyers a Closing Services Fee contrary to the terms of the FARBAR Contract, is and continues to constitute an unconscionable, deceptive,

and unfair act in the conduct of commerce that is injurious to consumers as it relates to the issuance and management of the closing of real estate transactions.

100.    Likewise,  Defendant's repeated and systematic practice of misrepresenting on the Settlement Statements that Buyers, such as the Plaintiff, are responsible for payment of Closing Services Fees is, and continues to constitute, an unconscionable, deceptive, and unfair act in the conduct of commerce as it relates to the issuance and management of the closing of real estate transactions.

101.    Plaintiffs and Class Members have been aggrieved by the Defendant's violations of FDUTPA.

102.    Defendant's conduct has a tendency to mislead Buyers as to the existence of an obligation they had not incurred.

103.    Defendant's deceptive acts or practices impact the public interest and have the capacity to deceive and to be unfair to a substantial portion of the public. The acts are committed in the course of Defendant's business; the acts are part of a pattern or generalized course of business; the acts were committed repeatedly and there is a real and substantial potential for repetition of Defendant's conduct.

104.    Defendant's unfair or deceptive acts or practices have directly and proximately caused actual damage to the Plaintiffs and members of the class.

105.    A bona fide present controversy exists among the Plaintiffs and the Defendant as to whether Defendant was entitled to charge Plaintiff a Closing Services Fee.

106.    Plaintiffs are in doubt as to the parties' respective immunities, powers, privileges, and/or rights arising from the facts alleged herein, and there is a bona fide, actual, present, and

practical need among the parties for a judicial declaration of such immunities, powers, privileges, and/or rights.

107.    Plaintiffs are entitled to recover reasonable attorney's fees and costs from the Defendant pursuant to Fla. Stat. §501.2105.

WHEREFORE, Plaintiffs demand judgment for damages in the amount of the total Closing Services Fees collected from Plaintiffs and Class Members pursuant to Fla. Stat. §501.211(1), declaratory judgment that the actions alleged herein violate the FDUTPA pursuant to Fla. Stat. §501.211(1), together with interest and costs and an award of attorney's fees as permitted by Fla. Stat. §501.2105 and pursuant to applicable common benefit law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of all others similarly situated, prays for judgment and relief on all causes of action alleged above, as follows:

A.    For an order certifying that this action may be maintained as a class action, certifying Plaintiffs as representatives of the Class, ordering Defendant to pay all costs associated with notice and administration of payment to the Class, and designating Plaintiffs' attorneys as Class Counsel;

B.    A declaration that Defendant's practice of charging and collecting Closing Services Fees from Buyers in cash transactions under FARBAR Contracts, violates the rights of Buyers;

C.    An injunction prohibiting Defendant from collecting Closing Services Fees from Buyers in cash transactions under FARBAR Contracts;

D.    For an award of actual damages in an amount to be determined at trial;

E.    For an award of costs of this suit, including reasonable attorney's fees;

F.    For an award of pre- and post-judgment interest on any amounts awarded; and

G.      Providing such further relief as may be just, appropriate, or proper.

## JURY DEMAND

Plaintiffs respectfully demands a trial by jury on all issues so triable.

DATED: February 7, 2020              Respectfully Submitted,

                                     By:      */s/ Joshua H. Eggnatz*
                                              Joshua H. Eggnatz, Esq. (FBN: 0067926)
                                              E-mail: JEggnatz@JusticeEarned.com
                                              **EGGNATZ | PASCUCCI**
                                              7450 Griffin Road, Suite 230
                                              Davie, FL 33314
                                              Telephone: 954-889-3359
                                              Facsimile: 954-889-5913

                                              Seth M. Lehrman (FBN: 132896)
                                              E-mail: seth@epllc.com
                                              **EDWARDS POTTINGER LLC.**
                                              425 North Andrews Avenue, Suite 2
                                              Fort Lauderdale, FL 33301
                                              Telephone: 954-524-2820
                                              Facsimile: 954-524-2822

                                              Richard B. Feinberg (FBN: 802808)
                                              E-mail: ricfeinberg@hotmail.com
                                              **FLORIDA LEGACY LAW, LLC**
                                              600 Cleveland Street, Suite 313
                                              Clearwater, FL 33755
                                              Telephone: 727 231-6400

                                              *Trial Counsel for Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was served via CM/ECF this 7th day of February 2020, to the following on the service list: below:

Jacqueline R. A. Root, Esquire
Florida Bar No.: 085700
PENNINGTON P.A.
2701 N. Rocky Point Drive – Suite 900
Tampa, FL 33607-5975
Phone: (813) 549-4146

E-mail: jroot@penningtonlaw.com

Elizabeth T. Ferrick (PHV)
Grant Ankrom (PHV)
DENTONS US LLP
One Metropolitan Square
211 N Broadway Suite 3000
St. Louis, MO 63102
Phone: (314) 241-1800
E-mail: elizabeth.ferrick@dentons.com
grant.ankrom@dentons.com

*Attorneys for Defendant First American
Title Insurance Company*