UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTAO PROPERTIES LLC, and
SAMIR KOLAR, on behalf of
themselves and others
similarly situated,

    Plaintiffs,

v.                                        Case No. 8:19-cv-3058-T-33AAS

FIRST AMERICAN TITLE
INSURANCE COMPANY,

    Defendant.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendant First American Title Insurance Company's Motion to Dismiss Second Amended Complaint (Doc. # 47), filed on February 21, 2020. Plaintiffs Antao Properties LLC and Samir Kolar responded on March 6, 2020. (Doc. # 48). For the reasons that follow, the Motion is granted in part and denied in part.

I.   **Background**

On November 14, 2017, Antao Properties and Kolar contracted to purchase a property in Pinellas County, Florida. (Doc. # 41 at 3). They agreed to pay cash for the property. (Id.). The seller designated First American "to be the Closing Agent for the procurement of title insurance and

1

to perform closing services ('Closing Services') in connection with the transaction." (Id. at 5).

The contract was the standard "'AS IS' Residential Contract for Sale and Purchase" approved by the Florida Bar ("FARBAR Contract"). (Id. at 3). Paragraph 9 of the FARBAR Contract relates to closing costs and title insurance. (Id.). Subparagraph 9(c) states:

> **(c) TITLE EVIDENCE AND INSURANCE**: At least _____ (if left blank, then 15, or if Paragraph 8(a) is checked, then 5) days prior to Closing Date ("Title Evidence Deadline"), a title insurance commitment issued by a Florida licensed title insurer, with legible copies of instruments listed as exceptions attached thereto ("Title Commitment") and, after Closing, an owner's policy of title insurance (see STANDARD A for terms) shall be obtained and delivered to Buyer. If Seller has an owner's policy of title insurance covering the Real Property, a copy shall be furnished to Buyers and Closing Agent within 5 days after Effective Date. **The owner's title policy premium, title search and closing services (collectively, "Owner's Policy and Charges") shall be paid, as set forth below.** The title insurance premium charges for the owner's policy and any lender's policy will be calculated and allocated in accordance with Florida law, but may be reported differently on certain federally mandated closing disclosures and other closing documents. For purposes of this Contract "municipal lien search" means a search of records necessary for the owner's policy of title insurance to be issued without exception for unrecorded liens imposed pursuant to Chapters 159 or 170, F.S., in favor of any governmental body, authority or agency.

(Id. at 4).

In the contract, Antao Properties and Kolar checked the option beneath Subparagraph 9(c) specifying that "Seller shall designate Closing Agent and pay for Owner's Policy and Charges, and Buyer shall pay the premium for Buyer's lender's policy and charges for closing services related to the lender's policy, endorsements and loan closing." (Id.).

"Pursuant to Paragraph 9(c)(i), charges and fees are only to be paid by the Buyer in the event the transaction is being financed by a lender." (Id.). Antao Properties and Kolar reason that, "[s]ince the Contract here was an all-cash transaction with no lender, [they] were not responsible for any loan or title agent closing fees, title policy premiums or lender endorsements." (Id.).

First American "performed Closing Services in connection with the transaction for which [it] charged a fee ('Closing Services Fee')" and the "Contract provided that the Closing Services Fee would only be charged to, and collected from, the Seller." (Id. at 5).

Yet, at closing, First American presented a settlement disclosure statement ("Settlement Statement"), which shows that First American both charged the seller with an authorized Closing Services Fee and charged Antao Properties and Kolar an allegedly unauthorized Closing Services Fee of $150.

3

(Id.). First American "knew or should have known that it was not permitted to charge [Antao Properties and Kolar] a Closing Services Fee." (Id. at 6).

Antao Properties and Kolar "relied on [First American] to prepare all closing documents, including the Settlement Statement, in accordance with their respective Contracts with Sellers." (Id.). They "signed their Settlement Statements . . . under a mistake of fact that the charges, receipts, and disbursements in their Settlement Statements were allocated, charged, and calculated correctly in accordance with their Contracts with Sellers." (Id.).

Antao Properties and Kolar allege that First American has similarly charged other buyers an improper Closing Services Fee in contravention of paragraph 9(c)(i) of the FARBAR Contract. Accordingly, the seek to represent a class of similar individuals defined thusly:

> All Buyers in all cash real estate sale transactions in Florida, that used an "AS IS" Residential Contract for Sale and Purchase form approved by the Florida Bar and Florida Association of Realtors, that selected sub-paragraph (i) of section 9(c), but who were charged and paid a Closing Agent Closing Services Fee, during the four years precedent to the date of filing the Complaint, through and until the date Notice is provided to the Class.

(Id. at 7).

Antao Properties initiated this action in state court on November 6, 2019. (Doc. # 1-1). First American removed the action to this Court on the basis of the Class Action Fairness Act. (Doc. # 1). Antao Properties then filed a first amended complaint on December 17, 2019 (Doc. # 5), which First American moved to dismiss. (Doc. # 34).

With leave of Court, Antao Properties subsequently filed a second amended complaint (Doc. # 41), adding Kolar as another Plaintiff. The second amended complaint asserts five counts: gross negligence (Count I); negligence (Count II); breach of fiduciary duty (Count III); unjust enrichment (Count IV); and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count V). (Id.). First American again moves to dismiss (Doc. # 47), and Antao Properties and Kolar have responded. (Doc. # 48). The Motion is ripe for review.

## II. Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the

complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

### III. Analysis

First American argues that the second amended complaint should be dismissed with prejudice for failure to state a claim. The Court will address the various arguments in turn.

#### A. Allegation of an Improper Charge

First American argues that all counts of the second amended complaint should be dismissed because Antao

6

Properties and Kolar have not plausibly pled that their purchase contract precluded First American from charging them the $150 fee for closing services. (Doc. # 47 at 9). First American contends that the FARBAR Contract is not a contract between First American and Antao Properties and Kolar and thus "was not intended to, and does not define, the entire universe of services that may be provided by First American to [Antao Properties and Kolar]." (Id. at 10).

Additionally, First American argues that the Settlement Statement, attached to the second amended complaint, "shows that First American, in fact, followed the directions set forth by the parties in the FARBAR Contract" because it charged the seller for "all three components of the 'Owner's Policy and Charges': (1) $1,115 for the owner's title insurance premium, (2) $150 for the tile search fee, and (3) $325 for closing services, including those related to the owner's policy." (Id. at 12). According to First American, "Paragraph 9(c)(i) addresses only those closing services associated with the issuance of a title insurance policy." (Id. at 13).

In response, Antao Properties and Kolar emphasize the plain language of the contract, which defines "Owner's Policy and Charges" as the "owner's title policy premium, title

7

search and closing services" — not just closing services "related to the owner's policy," as First American would read the contract. (Doc. # 48 at 9-10). Thus, according to Antao Properties and Kolar, "[g]iving meaning to every term, the unambiguous and plain language of the FARBAR Contract shows that all fees for Closing Services unrelated to a loan were to be charged only to the Seller, which [First American] failed to do." (Id. at 11). Alternatively, Antao Properties and Kolar argue that the FARBAR Contract is ambiguous regarding closing services. (Id. at 11-13).

The Court will not resolve the parties' disagreement over the correct interpretation of the contract at the motion to dismiss stage. Indeed, "the Court 'may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment.'" Geter v. Galardi S. Enterprises, Inc., 43 F. Supp. 3d 1322, 1328 (S.D. Fla. 2014)(quoting McKissack v. Swire Pac. Holdings, Inc., No. 09-22086-Civ, 2011 WL 1233370, at *3 (S.D. Fla. Mar. 31, 2011)). Even if the meaning of Paragraph 9(c) is clear and unambiguous, "[i]nterpretation of a clear and unambiguous contractual provision is a question of law properly decided on summary judgment." Ben-Yishay v. Mastercraft Dev., LLC, 553 F. Supp. 2d 1360, 1373 (S.D. Fla.

8

2008). And, if Paragraph 9(c) is ambiguous, interpretation of its meaning would require reference to extrinsic evidence — again, a summary judgment matter. See BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co., 706 F. App'x 521, 524 (11th Cir. 2017)("Should a contractual term be ambiguous — that is, reasonably susceptible to more than one meaning — then a reviewing court can consider extrinsic evidence to resolve the ambiguity."); Whitney Nat. Bank v. SDC Communities, Inc., No. 8:09-cv-1788-EAK-TBM, 2010 WL 1270266, at *5 (M.D. Fla. Apr. 1, 2010)("[A]t the motion to dismiss stage, it is inappropriate to decide whether language in a contract is ambiguous and then make determinations based on what one party believes the language of the contract to say.").

Upon review, the Court finds that Antao Properties and Kolar's theory — that the "closing services" fees to be paid by the seller included all closing services fees charged by First American, except closing services fees related to a lender's policy — is plausible. That is sufficient for now. The Court will not dismiss the amended complaint based on this argument.

**B.     <u>Gross Negligence</u>**

Next, even accepting Antao Properties and Kolar's theory that the $150 fee was improper, First American argues that Count I, for gross negligence, is due to be dismissed. (Doc. # 47 at 15-19).

To state a cause of action for gross negligence, Antao Properties and Kolar must allege "(1) the existence of a composite of circumstances which, together, constitute an imminent or clear and present danger amounting to more than the normal and usual peril; (2) a showing of chargeable knowledge or awareness of the imminent danger; and (3) an act of omission occurring in a manner which evinces a conscious disregard of the consequences." <u>Deutsche Bank Nat. Tr. Co. v. Foxx</u>, 971 F. Supp. 2d 1106, 1117 (M.D. Fla. 2013).

According to First American, Antao Properties and Kolar "have not sufficiently pled that First American 'consciously disregard[ed]' that imminent harm would be the result of its actions." (Doc. # 47 at 16). First American insists that the second amended complaint's allegation that it "made the conscious or active decision to either not read, or to ignore what it did read in the Contract" (Doc. # 41 at 13) is an improper legal conclusion that cannot support a claim. (Doc. # 47 at 16).

The Court disagrees with First American. While Antao Properties and Kolar's allegations of First American's knowledge are thin, they are sufficient. The second amended complaint alleges that First American charged Antao Properties and Kolar, as well as other class members, the closing services fee despite knowing that it was not permitted to do so under the FARBAR Contract. (Doc. # 41 at 6, 13). Furthermore, the second amended complaint alleges that First American "wholly failed to review" or "recklessly disregarded" Paragraph 9(c) of the FARBAR Contract "when allocating and charging costs to the Buyer and Seller." (Id. at 12).

Taken together and accepted as true at this stage, these allegations plausibly support that First American had "chargeable knowledge or awareness of the imminent danger" of charging Antao Properties and Kolar — as well as potential class members — with an improper fee. Deutsche Bank Nat. Tr. Co., 971 F. Supp. 2d at 1117. The Court will not dismiss the gross negligence claim.

### C. **FDUTPA**

First American argues that the FDUTPA claim fails because First American is statutorily exempt from such claims. Specifically, FDUTPA specifies that it does not apply

11

to "[a]ny person or activity regulated under laws administered by" "[t]he Office of Insurance Regulation ['OIR'] of the Financial Services Commission ['FSC']" or "[a]ny person or activity regulated under the laws administered by the former Department of Insurance which are now administered by the Department of Financial Services." Fla. Stat. § 501.212(4)(a) & (d).

First American insists that it "is regulated by the OIR of the FSC and the activities at issue are regulated under the laws administered by the former Department of Insurance, now by the Department of Financial Services." (Doc. # 47 at 19). First American is a title insurer licensed by the OIR. (Id.); see Carles Constr., Inc. v. Travelers Cas. & Sur. Co. of Am., No. 09-CV-23645, 2013 WL 12061474, at *1 (S.D. Fla. Feb. 11, 2013)("The [OIR] is responsible for all activities concerning insurers or other risk bearing entities."). And, according to First American, "the activities implicated by [Antao Properties and Kolar's] claims are regulated under the laws administered by the former Department of Insurance (now by the Department of Financial Services)." (Doc. # 47 at 20).

First American is correct. "FDUTPA does not apply to insurance companies." Zarrella v. Pac. Life Ins. Co., 755 F. Supp. 2d 1218, 1226 (S.D. Fla. 2010)(citations omitted). The

12

Zarrella court dismissed the FDUTPA claim with prejudice because the defendant was an insurance company. See Id. ("Pacific Life is an insurance company, so FDUTPA does not apply to claims against Pacific Life. Accordingly, because Plaintiffs' allegations cannot support this claim as a matter of law, the Court will dismiss Plaintiffs' FDUTPA claim with prejudice."); see also Antoine v. State Farm Mut. Auto. Ins. Co., 662 F. Supp. 2d 1318, 1326 (M.D. Fla. 2009)("Pursuant to Fla. Stat. § 501.212(4)(d), the [FDUTPA] does not apply to insurance companies regulated under the laws administered by the former Department of Insurance, now the Department of Financial Services. The Defendant State Farm Mutual Automobile Insurance Company, as its name reflects, is an insurance company. Therefore, no cause of action may be maintained against it under the [FDUTPA].").

The Court is not persuaded by Antao Properties and Kolar's argument that the Court should ignore the fact that First American is an insurance company because First American also engages in activities that might not be regulated by the Office of Insurance Regulation or Department of Financial Services. See United HealthCare of Fla., Inc. v. Brown, No. 06-20481-CIV, 2006 WL 8433492, at *2 (S.D. Fla. June 7, 2006)("Notwithstanding Cigna's status as an insurer licensed

under the provisions of the Code, [plaintiff] argues that Cigna should not be deemed exempt from the FDUTPA because some of Cigna's activities may not be regulated by the Office or the laws administered by the former Department of Insurance. No authority is cited for [plaintiff]'s interpretation of the FDUPTA as requiring both the person and all of the activities to be regulated by the Office or the laws administered by the former Department of Insurance. Indeed, such a reading appears to contradict the plain language of the statute, which confers an exemption on any regulated 'person *or* activity.'").[1] Thus, because First American is an insurance company regulated by the OIR, the FDUPTA claim must be dismissed with prejudice.

Accordingly, it is now

---

[1] Furthermore, the Court is not persuaded by Antao Properties and Kolar's reference to State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc., 427 F. App'x 714, 723 (11th Cir. 2011), rev'd in part on other grounds sub nom. State Farm Mut. Auto. Ins. Co. v. Williams, 824 F.3d 1311 (11th Cir. 2014). (Doc. # 48 at 14). There, the Court advised that "Florida courts resolve questions about the applicability of [Fla Stat. § 501.212(4)(a)] by looking to the activity, which is the subject of the lawsuit, and whether that activity is subject to the regulatory authority of the [OIR]." Id. However, that court looked to the "activity" engaged in by the defendants because the defendants were not insurance companies and, thus, not "persons" regulated by the OIR. Id. Here, however, First American is a "person" regulated by the OIR, so the Court need not analyze the nature of the "activity" in which First American engaged.

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant First American Title Insurance Company's Motion to Dismiss Second Amended Complaint (Doc. # 47) is **GRANTED IN PART AND DENIED IN PART.** The FDUTPA claim, Count V, is **DISMISSED WITH PREJUDICE.** All other claims survive. First American's answer to the second amended complaint is due within 14 days of the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 27th day of March, 2020.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE